1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11   ROBERT HERNDON,

12                                Plaintiff,

13      v.

14   MICHAEL J. ASTRUE, Commissioner of
Social Security,

15                           Defendant.

16

Case No. 10cv2209 BTM

**ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND GRANTING
DEFENDANT'S CROSS-MOTION
FOR SUMMARY JUDGMENT**

17

18       Plaintiff and Defendant have filed cross-motions for summary judgment.  For the

19   reasons set forth below, Plaintiff's motion is **DENIED** and Defendant's motion is **GRANTED**.

20

21                      **I.  PROCEDURAL BACKGROUND**

22       On July 30, 2007, Plaintiff filed an application for a period of disability and disability

23   insurance benefits and supplemental security income under Titles II and XVI of the Social

24   Security Act.  Plaintiff alleged disability beginning September 9, 2001.  Plaintiff's application

25   was denied initially and on reconsideration.  On September 1, 2009, a hearing was held

26   before Administrative Law Judge Larry B. Parker (the "ALJ").  On September 17, 2009, the

27   ALJ issued a decision denying benefits.  (Tr. 105-114.)  Plaintiff filed a request for review

28   with the Appeals Council, which was denied on August 25, 2010.   (Tr. 35-38.)  On March

15, 2011, the Appeals Council acknowledged receipt of a report from William L. Wilson, M.D., dated July 12, 2010 (Tr. 40-43), which was sent in by Plaintiff's counsel on or about August 23, 2010.  (Tr. 1.)  The Appeals Council explained that the letter was timely received but did not warrant any change in the Appeals Council's decision because the report showed no worsening of Plaintiff's impairments and no new impairment of disabling severity.[1]  The ALJ's decision then became the final decision of the Commissioner of Social Security. Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

## II. ALJ'S FINDINGS AND CONCLUSIONS

The ALJ found that Plaintiff was insured for disability insurance benefits through December 31, 2008.

The ALJ found that Plaintiff has the following severe impairments: disorders of the back and neck, obesity, and depression.

The ALJ concluded that Plaintiff's impairment or combination of impairments do not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ specifically discussed why Plaintiff's mental impairment did not meet or medically equal the criteria of Listing 12.04.

The ALJ determined that Plaintiff has the residual functional capacity to perform light work with the following additional limitations: stooping, kneeling and crouching limited to occasionally but all other postural limitations limited to frequent; right upper extremity limited

---

[1]   After the ALJ issued his decision, Plaintiff's counsel submitted supplemental medical records on December 7, 2009, February 22, 2010, August 23, 2010, and August 31, 2010.  The Appeals Council acknowledged as part of the record the evidence submitted on December 7, 2009 (Tr. 403-407) and the Wilson report submitted on August 23, 2010.  The Appeals Council did not make any mention of the records submitted on February 22, 2010 (Tr. 44-94) or the records submitted on August 31, 2010 (Tr. 2-34.)  It is unclear whether the Appeals Council was aware of this additional evidence.  It seems that if the Appeals Council had been aware of the evidence, it would have considered the evidence as it did the other late-filed evidence.  However, it is not necessary to remand the case for consideration of the evidence.  A remand for consideration of new evidence is only necessary where the evidence is material to determining disability and there is a reasonable possibility that the new evidence would have changed the outcome of the administrative hearing.  Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2011).  The Court has reviewed the evidence and has determined that it would not have affected the outcome of the proceedings.

10cv2209 BTM

1   to frequent regarding overhead work; no climbing, ladders, ropes or scaffolds; and avoid

2   concentrated exposure to extreme cold, extreme heat, humidity and vibration.  The ALJ

3   concluded that Plaintiff can carry out and remember simple and complex instructions, is able

4   to interact with co-workers, supervisors, and the general public, and is able to withstand the

5   stress and pressures associated with an eight-hour workday and day-to-day activities.

6        Based on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could

7   perform work that exists in significant numbers in the national economy, including small parts

8   assembler (DOT No. 929.587-010), counter clerk (DOT No. 249.366-010), and garment

9   folder (DOT No. 789.687-066).  Accordingly, the ALJ concluded that Plaintiff has not been

10  under a "disability" as defined in the Social Security Act, at any time from his alleged onset

11  date of September 10, 2004, through the date of the ALJ's decision. [2]

12

13                    III.  **STANDARD OF REVIEW**

14       The Commissioner's denial of benefits may be set aside if it is based on legal error

15  or is not supported by substantial evidence.  Jamerson v. Chater, 112 F.3d 1064, 1066 (9th

16  Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance.  Id.

17  Substantial evidence is "relevant evidence which, considering the record as a whole, a

18  reasonable person might accept as adequate to support a conclusion."  Flaten v. Secretary

19  of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995).  If the evidence can

20  reasonably support either affirmance or reversal, a court may not substitute its judgment for

21

---

22       [2]  Under the Social Security Regulations, the determination of whether a claimant is
23  disabled within the meaning of the Social Security Act is a five step process.  The five steps
    are as follows: (1) Is the claimant presently working in any substantially gainful activity?  If
    so, then the claimant is not disabled.  If not, then the evaluation proceeds to step two. (2) Is
24  the claimant's impairment severe?  If not, then the claimant is not disabled.  If so, then the
    evaluation proceeds to step three.  (3) Does the impairment "meet or equal" one of a list of
25  specific impairments set forth in Appendix 1 to Subpart P of Part 404?  If so, then the
    claimant is disabled.  If not, then the evaluation proceeds to step four.  (4) Is the claimant
26  able to do any work that she has done in the past?  If so, then the claimant is not disabled.
    If not, then the evaluation proceeds to step five.  (5) Is the claimant able to do any other
27  work?  If not, then the claimant is disabled.  If, on the other hand, the Commissioner can
    establish that there are a significant number of jobs in the national economy that the
28  claimant can do, the claimant is not disabled. 20 C.F.R. § 404.1520.  See also Tackett v.
    Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

that of the Commissioner.  <u>Tackett v.Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999).

## IV.  DISCUSSION

Plaintiff contends that the ALJ's decision was erroneous because the ALJ (1) improperly rejected the opinion of Plaintiff's treating physician Leonor Ordonez, M.D.; and (2) failed to provide sufficient reasons for discrediting Plaintiff's pain and symptom testimony. As discussed below, the Court is not persuaded by either of these arguments.

### A.  Rejection of Treating Physicians' Opinions

Plaintiff contends that the ALJ erred in failing to give controlling weight to the opinion of Dr. Ordonez.  If Dr. Ordonez's opinion was given controlling weight, Plaintiff would have met or equaled Listing 1.04A ,[3] or otherwise qualified as disabled.  As discussed below, the Court finds that the ALJ provided specific and legitimate reasons for rejecting the opinion of Dr. Ordonez.

#### 1.  Dr. Ordonez's Opinion

Dr. Ordonez treated Plaintiff for his back and neck pain complaints from August 2007

---

[3]  Listing 1.04A is for:

Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . .

Plaintiff had degenerative disc disease with some compression of the right hemicord.  Dr. Ordonez alone opined that Plaintiff also suffered from motor loss, atrophy, sensory loss, and positive straight-leg raising test.  Thus, crediting Dr. Ordonez's opinion, Plaintiff would meet Listing 1.04A.

into 2010.  Dr. Ordonez's treatment notes show that Plaintiff frequently saw Dr. Ordonez for follow up visits regarding his lower back and neck pain.  Dr. Ordonez prescribed pain killers including Hydrocodone (Vicodin), Naproxen, Tramadol, Neurontin, and Trazodone (Ultram), (Tr. 2-34, 44-94, 323-26, 378-88).

In a Spinal Residual Functional Capacity Questionnaire dated August 11, 2009 (Tr. 372-377), Dr. Ordonez indicated that Plaintiff's neck and lower back pain resulted in significant limitation in range of motion (30% for extension, flexion, left rotation, right rotation, left lateral bending, and right lateral bending), sensory loss, muscle spasms, muscle weakness, swelling, atrophy, motor loss, and chronic fatigue.  Dr. Ordonez also indicated that Plaintiff's pain would constantly interfere with attention and concentration needed to perform even simple work tasks and that Plaintiff was incapable of even low stress jobs.  Dr. Ordonez noted that Plaintiff could sit for 15 minutes before needing to get up, could stand for 15 minutes before needing to sit down or walk around, and could sit and stand/walk for less than 2 hours in an 8 hour day.  According to Dr. Ordonez, Plaintiff would need a job that would permit shifting positions and walking at will and permit unscheduled breaks approximately every hour.  Dr. Ordonez concluded that Plaintiff could rarely lift and carry 10 pounds or less; could never lift and carry more than 10 pounds; could rarely look down, turn his head, look up, or hold his head in a static position; could rarely twist, crouch/squat, or climb stairs; could never stoop/bend or climb ladders; could reach overhead for 40% of an 8-hour working day; and could use his hands for grasping/twisting/turning and fine manipulations for 50% of an 8-hour working day.

In a Physical Residual Functional Capacity Questionnaire dated 11/2/09 (submitted to the Appeals Council and made part of the record) (Tr. 403-407), Dr. Ordonez indicated that Plaintiff's pain was "often" severe enough to interfere with attention and concentration and that Plaintiff was slightly limited in his ability to deal with stress.  Dr. Ordonez also indicated limitations on sitting, standing, lifting, reaching, and manipulation that were consistent with the Spinal Residual Functional Capacity Questionnaire dated August 11, 2009.  Dr. Ordonez limited bending and twisting to 30% of an 8-hour working day.

2.  Law Governing Treating Physicians' Opinions

As a general matter, opinions of treating physicians are given controlling weight when supported by medically acceptable diagnostic techniques and when not inconsistent with other substantial evidence in the record.  See 20 C.F.R. § 404.1527(d)(2); SSR 96-2p. Where a treating physician's opinion is contradicted by another doctor, the ALJ may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record.  Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1990).  In doing so, the ALJ must do more than proffer his own conclusions – he must set forth his own interpretations and why they are superior to that of the treating physician's. Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).  The ALJ may meet this burden by conducting a detailed and thorough discussion of the facts and conflicting evidence, and by explaining his interpretations and findings.  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

Even if the treating physician's opinion is inconsistent with other substantial evidence in the record, the treating physician's opinions are still entitled to deference and must be weighted using the factors provided in 20 C.F.R. § 404.1527.  Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); SSR 96-2p.  These factors include, inter alia, the "nature and extent of the treatment relationship" between the patient and the treating physician, the "length of the treatment relationship and the frequency of examination," the amount of relevant evidence that supports the opinion and the quality of the explanation provided, and the consistency of the medical opinion with the record as a whole.   20 C.F.R. § 404.1527(d)(2)-(6).

3.  ALJ's Specific and Legitimate Reasons

The ALJ accorded the opinion of Dr. Ordonez "little weight," explaining: "[T]he opinion of this doctor appears on a fill-in-the-blank form, with only minimal notations.  The doctor did not adequately consider the entire record, including the statements of collateral sources and the objective findings of other treating physicians.  The objective evidence in the record does

1    not support the level of severity that this doctor assigns."  (Tr. 111.)  The Court finds the

2    ALJ's reasons to be specific and legitimate.

3         On August 31, 2007, Plaintiff underwent an MRI of his cervical spine.  (Tr. 371.)  The

4    impression  was of broad-based disk osteophyte complex at C5-C6, causing a mild central

5    canal stenosis.  It was noted that there was flattening of the right hemicord at this level,

6    suggesting that in certain neck positions, the stenosis is worse than observed.  An X-ray

7    taken on August 7, 2007, showed degenerative changes of the cervical and lumbar spine.

8    (Tr. 94; 387.)  The X-ray showed disc space narrowing at C4-5, C5-6 and C6-7, severe at

9    the lower levels, and mild disc space narrowing at L4-5 and L5-S1.  (Tr. 94.)

10        Dr. Sabourin performed an orthopedic consultation in November of 2007.  (Tr. 302-

11   07.) Dr. Sabourin performed a complete physical orthopedic examination.  He noted normal

12   station and gait, pain at extremes with range of motion with respect to cervical spine and

13   lumbar spine, only slight limitations on forward flexion and extension of cervical and lumbar

14   spine, slight limitations with respect to abduction of the right shoulder, slight limitation on

15   rotation of the hips, normal motor strength, and normal sensation.  Dr. Sabourin's impression

16   was:  (1) degenerative disc disease, lumbar spine; (2) degenerative disc disease, cervical

17   spine; (3) greater trochanteric bursitis on the left; (4) right shoulder bursitis.   Dr. Sabourin

18   opined that Plaintiff could lift or carry/push and pull 20 pounds occasionally and 10 pounds

19   frequently; stand and walk up to six hours of an 8-hour workday; sit for 6 hours of an 8-hour

20   workday; climb, stoop, kneel, and crouch only occasionally; and work with right arm above

21   the shoulder level frequently.

22        Dr. Soliman performed a psychiatric evaluation in May 2008.  (Tr. 341-45.)  Based on

23   his examination, Dr. Soliman diagnosed Plaintiff with major depression, moderate, and

24   concluded that Plaintiff was "able to understand, carry out, and remember simple and

25   complex instructions, " was "able to interact with co-workers, supervisors, and the general

26   public," and was "able to withstand the stress and pressures associated with an eight-hour

27   workday, and day-to-day activities."

28        Karolyn Mauro, M.D., a state medical consultant, filled out a physical residual

7

1   functional capacity assessment dated December 17, 2007. (Tr. 310-314.) Dr. Mauro opined

2   that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; stand and

3   walk 6 hours and sit about 6 hours in an 8-hour work day; occasionally climb ramps and

4   stairs; and occasionally balance, stoop, kneel, crouch, and crawl, but could never climb

5   ladders, ropes, or scaffolds.  Dr. Mauro limited Plaintiff to frequent overhead work with the

6   right upper extremity and indicated that Plaintiff should avoid concentrated exposure to

7   extreme temperatures, humidity, and vibration.

8        The ALJ assigned significant weight to Dr. Mauro's opinion regarding Plaintiff's

9   physical limitations.  The ALJ explained that her opinion was "well-supported by the medical

10  evidence, including the claimant's medical history and clinical and objective signs and

11  findings as well as detailed treatment notes, which provides a reasonable basis for

12  claimant's chronic symptoms and resulting limitations."  (Tr. 112.)

13       As pointed out by the ALJ, Dr. Ordonez's opinion was on a "fill-in-the-blank form, with

14  only minimal notations."  Dr. Ordonez was not an orthopedic specialist, and it appears that

15  Dr. Ordonez was relying in large part on Plaintiff's self-reporting in reaching her conclusions.

16  There is no record that Dr. Ordonez or any other doctor performed a physical examination

17  that established the physical and postural limitations set forth in the questionnaires.[4]  Dr.

18  Ordonez's treatment notes do not refer to any examinations revealing physical limitations

19  and do not mention that Plaintiff suffers severe pain with resulting disabling restrictions.  The

20  notes do not contain any observations by Dr. Ordonez regarding how Plaintiff's impairment

21

22  _____

23       [4]  The Court notes the large discrepancy between the range-of-motion limitations for
    the spine indicated by Dr. Ordonez (30% for extension, flexion, left rotation, right rotation,
    left lateral bending, and right lateral bending) and the range-of-motion limitations found by

24  Dr. Sabourin and Dr. Wilson (Dr. Ordonez referred Plaintiff to Dr. Wilson for pain
    management).  On July 12, 2010, Dr. Wilson found that Plaintiff's cervical range of motion

25  was 100% with respect to flexion and 80% with respect to extension, right axial rotation, and
    left axial rotation. (Tr. 42.) Dr. Wilson found that the lumbar range of motion was 100% with

26  respect to right lateral bending and left lateral bending, 70% with respect to right rotation and
    left rotation, and 60% with respect to extension (for flexion, Dr. Wilson noted that fingertips

27  reached the distal tibia with minor provocation of familiar pain). (Id.)  The Court also notes
    that Dr. Ordonez indicated "positive straight leg raising test," while Dr. Sabourin and Dr.

28  Wilson both found that straight leg raising was negative upon examination.  (Tr. 304, 42.)

10cv2209 BTM

3:10-cv-02209-BTM-BGS   Document 26   Filed 10/04/11   PageID.513   Page 9 of 12

affects his abilities to function at work or at home.[5]   The treatment notes just show that Plaintiff's various prescriptions were refilled from time to time and sometimes include comments indicating that Plaintiff's pain was being managed.  <u>See, e.g.</u>, Tr. 387 (noting that medication "helps to relieve pain"), 55 (Plaintiff is "doing well + needs refill"), 63 (noting "pain even w/ meds.  Wants PT b/c it helped"), 66 (Plaintiff "somewhat relieved with Naproxen").

The MRIs and X-rays show that there is degenerative disc disease,  some flattening of the right hemicord at C5-C6, and disc space narrowing on the cervical and lumbar spine.  Based on this evidence it can be expected that Plaintiff would experience some pain and some physical limitations but not necessarily the degree of debilitation claimed by Dr. Ordonez.

In contrast to Dr. Ordonez's opinion, Dr. Sabourin's opinion was based on a documented comprehensive orthopedic exam.  The Court notes that Dr. Sabourin's opinion is largely consistent with the more recent opinion of Dr. Wilson, who saw Plaintiff for a pain management consultation.   Dr. Ordonez did not mention or attempt to distinguish Dr. Sabourin's opinion.

Dr. Mauro's opinion is consistent with Dr. Sabourin's opinion.  Dr. Mauro's opinion is also consistent with the objective evidence in the record and Dr. Ordonez's treatment notes.

For these reasons, the Court concludes that the ALJ provided specific and legitimate reasons for according little weight to the opinion of Dr. Ordonez.


 **B.  <u>Rejection of Plaintiff's Symptom and Pain Testimony</u>**

At the hearing before the ALJ, Plaintiff claimed that due to extreme pain in his lower back and neck he has to change positions every 20 to 30 minutes.  (TR. 122.) Plaintiff rated his pain as an "8" on a scale of 1-10.  (Tr. 123.)  Plaintiff explained that he gets migraines

---

[5]  Plaintiff contends that the ALJ was obligated to recontact Dr. Ordonez to obtain additional information.  Plaintiff is incorrect.  An ALJ is required to recontact a doctor "only if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination. 20 C.F.R. §§ 404.152(e), 416.912(e)."  <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1217 (9th Cir. 2005).  Because there was adequate evidence for the ALJ to make a determination regarding Plaintiff's disability, the ALJ was not required to recontact Dr. Ordonez.  <u>Id.</u>

10cv2209 BTM

1   once or twice a week, constantly gets back spasms, experiences swelling in his legs and

2   feet, has shooting pains down his legs to his feet, and has numbness in his feet.  (Tr. 123-

3   25.)  Plaintiff explains that he spends most of his day lying down and tries not to lift anything.

4   (Tr. 125-26.)

5        The ALJ found that Plaintiff's statements concerning the intensity, persistence and

6   limiting effects of his symptoms were not credible.  Plaintiff contends that the ALJ failed to

7   provide sufficient reasons for discrediting his symptom and pain testimony.

8        In deciding whether to accept a claimant's subjective symptom testimony, an ALJ

9   must perform two stages of analysis.  See Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir.

10   1996).  The first stage of analysis is a threshold test set forth in Cotton v. Bowen, 799 F.2d

11   1403 (9th Cir. 1986).  Under this test, the claimant must (1) produce objective medical

12   evidence of an impairment or impairments; and (2) show that the impairment or combination

13   of impairments could reasonably be expected to produce some degree of the symptoms

14   described.  Id. at 1407-08.

15        "Once the claimant produces objective medical evidence of an underlying impairment,

16   an adjudicator may not reject a claimant's subjective complaints based solely on a lack of

17   objective medical evidence to fully corroborate the alleged severity of pain."  Bunnell v.

18   Sullivan, 947 F.2d 341, 345 (9th Cir. 1991).  This is so even if the claimant testifies that he

19   experiences pain or a symptom to a greater degree than would normally be expected as a

20   result of the medical impairment.  Cotton, 799 F.2d at 1407; Swenson v.Sullivan, 876 F.2d

21   683, 687-88 (9th Cir. 1989).

22        If the claimant satisfies the Cotton test and there is no evidence of malingering, the

23   ALJ can reject the claimant's testimony about the severity of his symptoms only by offering

24   specific, clear and convincing reasons for doing so.  Smolen, 80 F.3d at 1281.  The ALJ

25   must state specifically which symptom testimony is not credible and what facts in the record

26   support that conclusion.  Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).

27        Here, there is objective medical evidence of degenerative disc disease and the

28   impairment could reasonably be expected to produce some degree of the symptoms alleged

1  by Plaintiff.  There is no evidence of malingering.  Therefore, the ALJ was required to offer

2  specific, clear and convincing reasons for rejecting Plaintiff's pain testimony.

3       Although not all of the reasons the ALJ provided were valid,[6] the ALJ cited some clear

4  and convincing reasons for rejecting Plaintiff's testimony.  Specifically, the ALJ reasoned that

5  Plaintiff had not received the type of medical treatment one would expect for a totally

6  disabled person.  The ALJ also reasoned that Plaintiff's analgesic medication history is

7  inconsistent with his claimed severity of pain.  "He has never been maintained on regular

8  prescription of strong analgesics such as morphine, methadone, Fentanyl or Oxycontin.  The

9  record does reflect that the pain medication that the claimant does take, Vicodin, helps

10  relieve his pain."  (Tr. 111).

11       Evidence of conservative treatment is sufficient to discount a claimant's testimony

12  regarding severity of an impairment.  Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007).

13  The treatment of Plaintiff's back and neck impairment was relatively conservative, consisting

14  of pain killers and some physical therapy.  It does not appear that surgery was

15  recommended.

16       Furthermore, the pain killers and physical therapy appear to have helped Plaintiff with

17  his pain.  As noted above, Dr. Ordonez's treatment notes indicated that the medication"helps

18  to relieve pain," the pain was "even" with medication, and physical therapy "helped."  (Tr.

19  387,55, 63, 66.)  Even Dr. Wilson indicated that Plaintiff "had good progress with his low

20  back pain with physical therapy" and recommended that Plaintiff "[c]ontinue physical therapy

21

22

23

---

24     [6] The ALJ cited Plaintiff's daily activities as evidence that is inconsistent with disabling levels of pain.  The ALJ stated, "the claimant describes an active life that includes preparing

25  some meals, doing laundry, changing his linens, shopping and doing errands."  However, the record shows that Plaintiff's life was far from "active."  Plaintiff and his mother explained

26  that Plaintiff could prepare a sandwich or reheat previously prepared food, not cook complete meals. (Tr. 271, 279.) Plaintiff explained that he could do his own laundry as long

27  as it did not require carrying anything.  (Tr. 279.)  According to Plaintiff and his mother, Plaintiff can not go shopping or do any physical yard or house work.  (Tr. 272, 280).

28  Plaintiff's days are spent sleeping, reading, watching T.V., or using the computer.  (Tr. 269, 281).  These activities are not inconsistent with Plaintiff's allegations of disabling pain.

1  for low back pain." (Tr. 43.)[7]

2      The lack of objective evidence in the record supporting Plaintiff's pain and symptom

3  allegations considered together with Plaintiff's conservative treatment and evidence that the

4  pain killers and physical therapy were helping, constitute clear and convincing reasons for

5  rejecting Plaintiff's testimony.

6

7                          **V.  CONCLUSION**

8      For the reasons discussed above, Plaintiff's motion for summary judgment is **DENIED**

9  and Defendant's motion for summary judgment is **GRANTED**.  The Clerk shall enter

10  judgment for Defendant affirming the decision of the Commissioner.

11  **IT IS SO ORDERED.**

12

13  DATED:  October 4, 2011

14

15                          Honorable Barry Ted Moskowitz
                           United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27  _____

28      [7]  Dr. Wilson's report lists Oxycodone as one of Plaintiff's medications.  (Tr. 41.)
     However, the Court did not see any records establishing that Oxycodone was prescribed by
     Dr. Ordonez or any other doctor.